# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-0276V
UNPUBLISHED

| | |
|---|---|
| JULIE DRUMM,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: September 9, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Adriana Ruth Teitel, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On February 21, 2019, Julie Drumm filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine she received on October 20, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA occurred within 48 hours of vaccination.

## I. Relevant Procedural History

On March 23, 2020, about 13 months after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner had not established entitlement to compensation. ECF No. 17. Respondent specifically maintained that "[t]he current case record does not contain preponderant evidence to establish that petitioner's shoulder pain began within 48 hours of vaccine administration. Therefore, there is no objective evidence to support her bare allegation that her shoulder pain began in close temporal proximity to her vaccination."[3] *Id.* at 6.

On June 26, 2020, Petitioner filed a supplemental affidavit and affidavits from her husband and children. ECF No. 19. The same day, she filed a Motion for a Ruling on the Record seeking a fact ruling on the issue of onset. ECF No. 20. On July 27, 2020, Respondent filed a response to the motion (ECF No. 21) and on August 3, 2020, Petitioner filed a reply to Respondent's response. ECF No. 22. The issue of onset is ripe for a fact ruling.

## II. Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). The Federal Circuit has said that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to

---

[3] Respondent also argued that Petitioner's pain was not limited to her left shoulder and radiated into her elbow. ECF No. 17 at 6. However, only the issue of onset is ripe for decision.

>facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

The Federal Circuit recently stressed, however, that records enjoy no automatic presumption of accuracy, despite their "trustworthy" evidentiary character. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021). Indeed, "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998); *see also Lowrie*, 2005 WL 6117475 at *19 ("written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent").

The Court has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Thus, medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare not only the medical records and testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). And although later oral testimony that conflicts with medical records is less reliable as a general matter, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with the contemporaneous records. *Kirby*, 997 F.3d at 1382-84.

## IV. Finding of Fact

I make the following findings after a complete review of the record, including all medical records and affidavits, the arguments in Respondent's Rule 4(c) report, and the arguments in Petitioner's Motion for Ruling on the Record, and the arguments in the response and reply thereto. I find the following points to be particularly relevant:

- Petitioner is a trained nurse and worked as a school nurse in Edmond Public Schools. Petition at 1, Ex. 9 at ¶3.

- Petitioner's medical records from prior to her vaccination reveal asthma, right elbow pain/tendonitis, and a heart condition, but no injuries to or medical issues with her left shoulder or arm. *See* Ex. 2, 3, 5.

- Petitioner received the flu vaccine in her left deltoid at her primary care physician ("PCP") in Edmond, Oklahoma, on October 20, 2017. Ex.1 at 1; Ex. 2.

- Petitioner recalled that "[i]mmediately upon receiving the flu vaccine in my left arm, I felt pain as it was being administered. I rubbed my shoulder as to relieve the pain but the pain remained a constant, and it was very sore." Ex. 6 at ¶2.

- Petitioner stated that on the day she received her flu shot, her husband and children received flu shots as well. Ex. 9 at ¶1. She stated that she remembered walking out to the car after the vaccination and asking her son

whether his arm hurt. *Id.* Petitioner's husband and children[4] submitted affidavits on June 26, 2020, almost three years after Petitioner's vaccination. ECF No. 19.

- Petitioner stated that she "knew I would have some soreness after receiving the flu shot as I have received the flu vaccine before, so I thought that this pain would go away." Ex. 6 at ¶3. Petitioner stated that she "had never before heard of a SIRVA or knew of a case where an intramuscular injection could do such damage." Ex. 9 at ¶3. She believed "the pain and range of motion problems I was experiencing would likely go away on its own and that is why I did not immediately seek out medical attention." *Id.* Petitioner sought medical treatment when she "could no longer stand the pain." Ex. 6 at ¶9.

- There is nothing in the records that suggest that Petitioner sought or received treatment for her shoulder pain or any other medical issue during the time between her vaccination and when she first sought treatment for her left shoulder pain.

- Petitioner first sought medical treatment for her left shoulder pain from her PCP, Dr. Joseph Jamison, on March 7, 2018 - 138 days, or approximately four and one-half months after her vaccination. Ex. 2 at 186. She reported "left upper arm pain since getting her flu shot on 10/20/17." *Id.* She described progressively worsening pain and decreased strength and range of motion. *Id.* Dr. Jamison noted "decreased range of motion on abduction and external rotation," tenderness, and "4/5 weakness of deltoid muscle on abduction." *Id.* at 187. He diagnosed Petitioner with chronic left shoulder pain and adverse effect of influenza vaccine and prescribed physical therapy and Mobic. *Id.* at 188.

- Ms. Drumm began physical therapy on March 16, 2018. Ex. 5 at 170. At her initial evaluation, she stated that her pain began after a vaccination,[5] explaining that the shot "hurt going in and the pain never went away." *Id.* She explained that she "kept thinking it would go away." *Id.* Upon examination, Petitioner had positive impingement tests (Hawkin's and Empty can), decreased strength, and reduced range of motion ("ROM"). *Id.*

---

[4] It is not clear from the record whether Petitioner's children were minors or adults at the time they signed their affidavits on June 26, 2020. *See* Ex. 11, 12, 13, ECF No. 19.

[5] The record notes the date of the vaccination as October 23, 2017, not October 20, 2017. Ex. 5 at 166.

- at 172-74. Petitioner attended 7 physical therapy sessions through June 27, 2018. Ex. 5.

- On June 28, 2018, Petitioner presented to Dr. Jamison for her annual physical. Ex. 2 at 198. At that visit, Dr. Jamison ordered an MRI of Petitioner's left shoulder,[6] which was done on July 19, 2018. *Id.* at 198, 236. The MRI revealed mild degenerative shoulder changes. *Id.* at 236.

- On July 30, 2018, she presented to Mark Patrick Stout, a physician's assistant ("PA"), in the orthopedic clinic. Ex. 4 at 8. Petitioner reported "left shoulder pain that began after receiving an influenza vaccination." *Id.* She stated that she had had only "minimal improvement" from physical therapy. *Id.* PA Stout noted "tenderness to palpitation over the deltoid and lateral aspect of the shoulder," decreased range of motion, and positive impingement tests. *Id.* PA Stout diagnosed rotator cuff tendonitis. *Id.* at 12. Petitioner received a steroid injection, a prescription for Mobic, and was advised to continue physical therapy. *Id*. Petitioner returned to physical therapy for one session on August 15, 2018. Ex. 3 at 128.

- Petitioner returned to PA Stout on August 27, 2018 reporting good relief from the previous steroid injection. Ex. 4 at 24. Examination revealed reduced pain, increased range of motion, and negative or only mildly positive impingement tests. *Id.* at 24, 26. Petitioner returned to PA Stout on October 3, 2018 complaining of worsening symptoms. Ex. 4 at 37. Petitioner received her second steroid injection. *Id. She* returned to orthopedics on November 19, 2018, seeing Dr. Thaddeus Carnine, who noted full range of motion, normal rotator cuff strength, and only mild tenderness. *Id*.

- Petitioner returned to PA Stout on February 21, 2019, reporting that her left shoulder pain had gradually returned to a level of 4/10 and worse with movement. Ex. 7 at 1. Petitioner had "positive findings of shoulder impingement" and received a third steroid injection. *Id.* Petitioner returned Dr. Carnine on June 11, 2019. Ex. 8 at 1. Dr. Carnine noted that Petitioner had "full range of motion, but does have impingement findings and positive crossover." *Id.* He and Petitioner discussed surgical intervention but left future treatment up to her on an as needed basis. *Id.*

---

[6] The record of the June 28, 2018 visit does not reveal any left shoulder examination or treatment. Ex. 2 at 206-10. Petitioner stated that she emailed Dr. Jamison after three physical therapy sessions asking for an MRI of her shoulder, however, there are no email communications in the record. Ex. 6 at ¶12.

The primary issue with Petitioner's claim of onset within 48 hours after her flu vaccination is the length of time between her vaccination and her first report of left shoulder pain to a medical professional. Petitioner waited just under five months to seek treatment for her left shoulder pain. Ex. 2 at 186. I have previously commented that it is reasonable to expect that an average claimant "might seek medical treatment sooner if in fact the person was experiencing sudden post-vaccination pain." *Pitts v. Sec'y of Health & Human Servs.*, No. 18-1512V, 2020 WL 2959421, at *5 (Fed. Cl. Spec. Mstr. April 29, 2020).

At the same time, however, there are a variety of reasonable explanations for why a claimant might delay treatment – and thus delay does not automatically preclude a Table onset finding. Petitioner's case is similar to the petitioner in *Winkle v. Sec'y of Health & Human Servs.*, No. 20-0485, 2021 WL 2808993, at *4 (Fed. Cl. Spec. Mstr. June 3, 2021) (finding onset within 48 hours where petitioner sought treatment for the first time nearly five months after vaccination). Like the petitioner in *Winkle*, although there was a longer-than-average delay in seeking treatment for her shoulder pain, Ms. Drumm did not seek treatment for *any* medical issue during the period between her vaccination on October 20, 2017 and her first report of shoulder pain. "Such intervening treatment evidence can in many cases either corroborate a petitioner's claim or undermine it – but it is totally absent here." *Winkle,* 2021 WL 2808993, at *4.

Once Petitioner sought treatment, her contemporaneous medical records reveal repeated consistent reports of onset of pain at the time of vaccination. *See Winkle*, 2021 WL 2808993, at *4 (noting that petitioner's consistent statements to treatment providers should be afforded substantial weight as they were made contemporaneously and for the purpose of obtaining medical treatment). Thus, at her first visit with Dr. Jamison on March 7, 2018, Petitioner complained of left upper arm pain since getting her flu shot on 10/20/17." Ex. 2 at 186. In fact, Dr. Jamison diagnosed Petitioner with "adverse effect of influenza vaccine."[7] *Id.* at 188. Next, Petitioner presented for physical therapy treatment. Ex. 5 at 170. While I acknowledge that the initial physical therapy record erroneously states that the vaccination was on October 23, 2017, the physical therapist recorded that Petitioner stated the shot "hurt going in and the pain never went away." *Id.* The totality of the record shows that Petitioner's pain began with the vaccination, even if the date was recorded incorrectly. Finally, when Petitioner presented to the orthopedic clinic on July 30, 2018, she reported "left shoulder pain that began after receiving an influenza vaccination." Ex. 4 at 8. Without exception, Petitioner stated that her pain began at the time of vaccination.

---

[7] Petitioner stated that Dr. Jamison also filed a VAERS report after that first visit, however, no VAERS report appears in the filed records. Ex. 6 at ¶9.

Petitioner's affidavit testimony is consistent with her contemporaneous medical records regarding the onset of her pain. As she also told her medical providers, Ms. Drumm alleges that "[i]mmediately upon receiving the flu vaccine in my left arm, I felt pain as it was being administered. I rubbed my shoulder as to relieve the pain but the pain remained a constant, and it was very sore." Ex. 6 at ¶2. She recalled "walking out to the car with her son Benjamin," who also received a flu shot that day, asking "him if his arm hurt." Ex. 9 at ¶1-2. The Federal Circuit has held that it is appropriate to credit the lay testimony of a petitioner when said testimony does not conflict with the medical records. *Kirby*, 997 F.3d at 1384. Petitioner's affidavit testimony provides consistent detail to the more general statements noted in the medical records.

I also find Petitioner's explanation for her delay to be reasonable and credible. *See, e.g., Stevens v. Sec'y of Health & Human Servs*, No. 90-221, 1990 WL 608693, *3 (Fed. Cl. Spec. Mstr. 1990) (noting that clear, cogent, and consistent testimony can overcome missing or contradictory medical records). Petitioner, who is a nurse, did not believe a vaccine could cause "such damage" to her shoulder. Ex. 9 at ¶3. She stated that she had received flu vaccines in the past and knew that some soreness was normal. Ex. 6 at ¶3. She believed that her symptoms would resolve on their own and sought treatment once she could "no longer stand the pain." Ex. 9 at ¶3, Ex. 6 at ¶9. In fact, Petitioner's physical therapist noted at her initial visit on March 16, 2018 that Petitioner had stated that "she kept thinking it would go away." Ex. 5 at 166. Again, Petitioner's affidavit testimony is consistent with her statements recorded by her medical providers.

"It is common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own." *Winkle*, 2021 WL 2808993, at *4. Further, it is common for medical professionals who may have been injured by a vaccination to monitor their own condition and self-treat while delaying formal medical treatment. *See, e.g., Rayborn v. Sec'y of Health & Human Servs.*, No. 18-0226, 2019 WL 4447391, at *4 (Fed. Cl. Spec. Mstr. June 7, 2019). While delay does go to the question of damages (since it establishes that overall severity of the pain was not so great that Petitioner did not feel she could manage it on her own) – and I will take it into account if this case goes to damages – it does not eliminate the possibility of a timely Table onset.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

V.     **Scheduling Order**

The following is <u>**ORDERED:**</u> **Respondent shall file, by <u>Thursday, October 14, 2021</u>, a status report indicating how he intends to proceed in this case in light of the record and this fact ruling**. **The status report shall indicate whether he is**

**willing to engage in tentative discussions regarding settlement or proffer or remains opposed to negotiating at this time.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
